**SHUB LAW FIRM LLC**
Jonathan Shub (State Bar No. 237708)
*jshub@shublawyers.com*
Kevin Laukaitis (Pro Hac Vice to file)
*klaukaitis@shublawyers.com*
134 Kings Highway E Fl 2
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile:  (856) 210-9088

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice to file)
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Telephone:  (516) 268-7080
Facsimile:  (516) 234-7800
*Counsel for Plaintiff and the Proposed Class*

*Attorney for Plaintiff, individually and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA ROBIE, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| TRADER JOE'S COMPANY, | **Demand for Jury Trial** |
| Defendant. | |

Plaintiff Lisa Robie ("Plaintiff"), on behalf of herself and others similarly situated brings this Class Action Complaint against Trader Joe's Company ("Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

1

**INTRODUCTION**

1.    Defendant manufactures distributes, markets, labels and sells breakfast cereal labeled as "Vanilla Almond Clusters – A blend of Vanilla Oat Clusters, Corn Flakes, Multigrain Flakes and Almonds" under their Trader Joe's brand ("Product").

2.    The Product is available to consumers from defendant's over five hundred (500) retail stores in the United States and website and is sold in boxes of 20 OZ (568g).

3.    During the Class Period (as defined below), Plaintiff purchased the Product in California.

4.    Defendant falsely and misleadingly markets the Product to consumers as having a primary characterizing flavor of "Vanilla" that comes from vanilla beans, from the vanilla plant.



2

CLASS ACTION COMPLAINT

5.      In fact, the Product contains non-vanilla, artificial flavors, not disclosed to consumers and has *de minimis* vanilla.

6.      Defendant charges a price premium for the Product.

7.      Plaintiff seeks damages and an injunction to stop Defendant's false and misleading marketing practices with regards to the Product.

### JURISDICTION

8.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

9.      The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

10.     Plaintiff seeks to represent a class of citizens of California and Oregon. Diversity is established because under CAFA, members of the proposed class are citizens of Oregon, which is a different state than defendant, California. 28 USC 1332(d)(2)(A).

11.     CAFA defines class members as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 USC 1332(d)(1)(D).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

### PARTIES

13.     Plaintiff is a resident of the City of Oakland and County of Alameda, California.

3

CLASS ACTION COMPLAINT

14.     During the Class Period (as defined below), in California, she purchased the Product for personal, family, or household use on occasions during 2019 and 2020 and on or around February 15, 2020.

15.     Plaintiff purchased the Product at defendant's store locations, including 22224 Redwood Rd, Castro Valley, CA 94546.

16.     Plaintiff would not have purchased or paid more for Product had she realized that much, if not all, of the vanilla flavor came from non-vanilla plant sources.

17.     The front of the Product said "Vanilla" in large letters.

18.     Plaintiff relied upon this representation when she purchased the Product.

19.     She believed that the vanilla flavor in the Product was only from vanilla beans and would come only from the vanilla plant and not from artificial flavors.

20.     Plaintiff would not have purchased the Product had Plaintiff understood the true flavor composition of the Product.

21.     Plaintiff would purchase the Product again in the future if the Product were remedied to reflect Defendant's labeling and marketing claims for it.

22.     Defendant Trader Joe's Company is a California corporation, with its principal place of business in Monrovia, California.

## BACKGROUND

23.     The main flavor of the Product is designated as "Vanilla," understood by consumers to mean the vanilla flavor comes exclusively (if not predominantly) from the vanilla plant.

24.     Unfortunately for consumers, the "Vanilla" representation is false and misleading because the Product's vanilla taste is provided predominantly, if not exclusively, from sources other than vanilla beans from the vanilla plant and contains less vanilla than consumers expect.

4

CLASS ACTION COMPLAINT

25.    In fact, the predominant source of the Product's vanilla flavor is from ethyl vanillin.

26.    Ethyl vanillin does not come from the vanilla plant at all – it is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. *See* 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "[s]ynthetic flavoring substances and adjuvants").

### CONSUMERS' PREFERENCE FOR NON-ARTIFICIAL FLAVORS

27.    According to recent industry reports, "Food companies are dropping artificial flavors, coloring, preservatives and other additives with scary names and focusing more on natural, wholesome and fresh ingredients."[1]

28.    Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[2]

29.    New Hope Network concluded that "71% of consumers today are avoiding artificial flavors."[3]

30.    Label Insight determined that 76% of consumers avoid artificial flavors.[4]

31.    Consumers are seeking products which obtain their flavor from their characterizing food ingredients, i.e., strawberry shortcake which gets is flavored from actual strawberries as opposed to strawberry flavor synthesized from cherries.[5]

32.    As "natural, organic and better-for-you trends proliferate, demand has flourished for naturally sourced vanilla."[6]

---

[1] Jeff Daniels, Why your favorite foods may be getting new recipes, CNBC, September 19, 2016
[2] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[3] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[4] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[5] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[6] Amanda Del Buono, *Suppliers utilize cost-effective vanilla ingredient solutions*, Beverage Industry (last updated Oct. 14, 2016).

CLASS ACTION COMPLAINT

33.     Manufacturers have responded, "by transitioning from artificial to natural ingredients," including "natural vanilla ingredients."

34.     Global climate disruptions resulting in natural disasters befalling the primary vanilla producing country of Madagascar, have caused vanilla shortages.

35.     This disruption in available vanilla has caused companies to cut corners when it comes to using vanilla in their products.

36.     Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

37.     The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavorings.

38.     The vanilla bean is not consumed by itself – it is heated in the sun for weeks until it is placed in ethyl alcohol, where its flavor constituents are extracted in the solution ("vanilla extract"). 21 C.F.R. § 169.175 ("Vanilla extract.").

## DEFENDANT'S MISLEADING "VANILLA" REPRESENTATIONS

39.     Section 401 of the Federal Food, Drug and Cosmetic Act ("FFDCA") directs the Food and Drug Administration ("FDA") to establish standards and rules for food labeling where necessary to promote honesty and fair dealing in the interest of consumers.

40.     The authority granted by Congress to the FDA enables the agency to combat an economic problem: the marketing of foods from which traditional constituents are removed or new or different (often cheaper and artificial) ingredients are substituted.

41.     As such, the federal food standards are, according to the FDA, intended to protect consumers from economic fraud and have served as "a trusted barrier against substandard and fraudulently packaged food since their enactment in the 1938 FFDCA."

6

42.     Consumers want the vanilla in vanilla flavored products to come from a real source, i.e., from vanilla beans from the vanilla plant.

43.     Unfortunately, companies adulterate their purported vanilla flavored products with cheap synthetics and substitutes such as ethyl vanillin – a substance manufactured in factories from synthetics and not from vanilla beans – and non-vanilla vanillin, in order to reap even larger corporate profits from consumers.

44.     To combat this vanilla fraud, the FDA has strict rules regarding use of the term "vanilla" on the labels of food products.

45.     According to the flavor industry trade group, FEMA, where a product's front label representation is "Vanilla" without qualification, it "lead[s] consumers to believe that it is flavored with vanilla extract, or another vanilla flavoring derived solely from vanilla beans, as defined in the federal standard of identity when in fact it is not.[7]

46.     Relevant regulations "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans."[8]

47.     There are specific vanilla labeling requirements for foods characterized as vanilla because vanilla is uniquely vulnerable to being adulterated, which take precedence over the general flavor labeling requirements when they otherwise conflict.

48.     The vanilla standards have been in place for over fifty (50) years, and companies'

---

[7] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at 46, 54, Apr. 25, 2018 ("Hallagan & Drake").
[8] Id.

7

CLASS ACTION COMPLAINT

adherence to these regulations have benefitted consumers who otherwise would not be able to rely on a product's representations.

49.     The FDA regulations regarding vanilla effectively establish custom and practice in the industry so that consumers' experience with that custom and practice primes them to infer from the Products' labeling that the Products gets its vanilla flavor from the vanilla plant.

50.     For instance, vanillin not from vanilla beans has always been an artificial flavor when used with vanilla.

51.     Consumers are accustomed to products labeled "vanilla," without any qualifiers such as "flavored," "artificial flavors" or "with other natural flavors," to mean that the vanilla flavor comes only from the ingredient of vanilla beans.

52.     Unfortunately for consumers, scientific testing shows the Product is not flavored only through use of vanilla beans, but from ethyl vanillin and the amount of real vanilla is *de minimis*.

8

CLASS ACTION COMPLAINT

## Vanilla Almond Clusters Cereal

**Trader Joe's Vanilla Almond Clusters Cereal**
Production Code: 2516081
5.25g, 1 ug Int. Std., 100C/30 Min. by Purge & Trap-Thermal Desorption-GC-MS

Data File = TSQA4234

| MS Scan # | Area Integration | Peak Assignment | Conc. PPB w/w |
|---|---|---|---|
| 761 | 7467961 | toluene-d8 (internal standard) | 190.48 |
| 764 | 1378518 | isopentyl alcohol | 32.70 |
| 788 | 228357 | butyric acid | 5.42 |
| 795 | 436733 | ethyl butyrate | 10.36 |
| 811 | 9588415 | hexanal | 227.46 |
| 836 | 3724 | 2-methyl-2-pentenal | 0.00 |
| 844 | 38482 | pentyl alcohol | 0.91 |
| 848 | 226023 | methyl pyrazine | 5.36 |
| 856 | 498835 | furfural | 11.83 |
| 864 | 30352 | 2-methylbutyric acid | 0.72 |
| 883 | 343096 | trans-2-hexenal | 8.14 |
| 898 | 647130 | hexyl alcohol | 15.35 |
| 906 | 389689 | isopentyl acetate | 9.24 |
| 926 | 74223 | 2-heptanone | 1.76 |
| 931 | 75184 | 2-butyl furan | 1.78 |
| 943 | 342850 | heptanal | 8.13 |
| 954 | 45074 | methional | 1.07 |
| 963 | 203971 | 2,6-dimethylpyrazine | 4.84 |
| 977 | 94535 | ? 124 mw | 2.24 |
| 990 | 1892169 | ? 124 mw | 44.89 |
| 994 | 285161 | ? 124 mw | 6.76 |
| 1003 | 1028568 | isobutyl butyrate | 24.40 |
| 1013 | 719430 | trans-2-heptenal | 17.07 |
| 1023 | 1102222 | hexanoic acid | 26.15 |
| 1031 | 1839066 | benzaldehyde | 43.63 |
| 1041 | 106865 | 6-methyl-5-hepten-2-one | 2.54 |
| 1050 | 538615 | 2-pentyl furan + trace of dimethyl trisulfide | 12.78 |
| 1060 | 2381459 | 2,4-heptadienal | 58.49 |
| 1064 | 751468 | octanal | 17.83 |
| 1071 | 62334 | C3 alkyl pyrazine isomer | 1.48 |
| 1079 | 2094107 | 2,4-heptadienal | 49.68 |
| 1095 | 161726 | cyclotene | 3.84 |
| 1104 | 1523535 | 3-octene-2-one | 36.14 |
| 1106 | 986805 | limonene | 23.41 |
| 1118 | 140162 | 3-methylbutyl butyrate | 3.32 |
| 1124 | 1175622 | phenyl acetaldehyde | 27.89 |
| 1129 | 840146 | trans-2-octenal | 19.93 |
| 1132 | 331241 | octyl alcohol | 7.86 |
| 1142 | 11777475 | 3,5-octadien-2-one | 279.38 |
| 1151 | 374196 | 3-ethyl-2,5-dimethylpyrazine | 8.88 |
| 1168 | 3077188 | 3,5-octadien-2-one | 73.00 |
| 1177 | 7302529 | nonanal | 173.23 |
| 1190 | 236113 | methyl octanoate | 5.60 |
| 1228 | 345063 | octanoic acid | 8.19 |
| 1237 | 712956 | trans-2-nonenal | 16.91 |
| 1243 | 393765 | benzyl acetate | 9.34 |
| 1280 | 429813 | decanal | 10.20 |
| 1291 | 8029549 | naphthalene-d8 (internal standard) | 190.48 |
| 1324 | 580085 | nonanoic acid | 13.76 |
| 1338 | 485338 | trans-2-decenal | 11.51 |
| 1348 | 417348 | p-anisaldehyde | 9.90 |
| 1353 | 3250266 | possibly butenyl cyclohexene (cis) | 77.10 |
| 1363 | 1770026 | possibly butenyl cyclohexene (trans) | 41.99 |
| 1370 | 233351 | 2,4-decadienal | 5.54 |
| 1377 | 191902 | undecanal | 4.55 |
| 1394 | 798296 | 2,4-decadienal | 18.94 |
| 1414 | 438376 | decanoic acid | 10.40 |
| 1431 | 722170 | piperonal | 17.13 |
| 1468 | 159617 | trans-2-undecenal | 3.79 |
| 1477 | 1068581 | vanillin | 25.35 |
| 1487 | 89226 | methyl udecanoate | 2.12 |
| 1506 | 532810 | geranyl acetone | 12.64 |
| 1524 | 275260 | ethyl vanillin | 6.53 |
| 1530 | 241398 | gamma-decalactone | 5.73 |
| 1557 | 173195 | delta-decalactone | 4.11 |
| 1661 | 166271 | triethyl citrate | 3.94 |
| 1715 | 63813 | methyl myristate | 1.51 |
| 1896 | 69343 | methyl palmitate | 1.64 |
| | | **Total Out-Gas Products @100C/30 Min.** (excluding internal standards) | **1636.38** |

| Peak Assignment | Conc. PPB w/w |
|---|---|
| Piperonal | 17.13 |
| trans-2 undecenal | 3.79 |
| vanillin | 25.35 |
| methyl udecanoate | 2.12 |
| geranyl acetone | 12.64 |
| ethyl vanillin | 6.53 |

9

CLASS ACTION COMPLAINT

53.     The analysis reveals that the Product is not flavored exclusively, or even predominantly, with vanilla from vanilla beans from the vanilla plant.

54.     Rather, the opposite is true – the vanilla flavoring is provided through synthetic vanilla substitutes, and has *less* real vanilla, not disclosed to consumers.

55.     The Product contains ethyl vanillin, an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. See 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "[s]ynthetic flavoring substances and adjuvants").

56.     Ethyl vanillin is at least four times more potent than vanillin derived from vanilla beans.

57.     The Product contains vanillin from non-vanilla sources, an artificial flavor.

58.     The Product contains an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation, which is a strong indicator it contains vanillin from non-vanilla sources, an artificial flavor.

59.     The Product also contains high levels of piperonal (heliotropine), an artificial flavor not found in vanilla. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[9]

60.     Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."[10]

61.     Consumers will not feel they need to turn over the box to double check the ingredient list because the lack of any qualifying terms, i.e., "flavored," or "natural flavors," on the front label gives them the impression that the flavor is only from the characterizing ingredient, vanilla beans.

62.     Nevertheless, the fine print ingredient listing of "Natural Flavor," will not disclose

[9] C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589.
[10] Piperonal, Moellhausen S.p.A., UL Prospector.

10

CLASS ACTION COMPLAINT

to consumers that (1) the amount of real vanilla in the Products is at most, *de minimis* and (2) the

Product contains artificial vanilla, *viz*, vanillin and ethyl vanillin.

Vanilla Almond Clusters Cereal

**INGREDIENTS:** WHOLE ROLLED OATS. MILLED CANE SUGAR, VEGETABLE OIL (CANOLA AND/OR SAFFLOWER AND/OR SUNFLOWER OIL), RICE FLOUR, ALMONDS, CORNSTARCH, HONEY, NATURAL FLAVOR, SALT, BARLEY MALT SYRUP.

63.     The ingredient of "Natural Flavor" may include a small amount of real vanilla, but it also contains ethyl vanillin which provides most of the Product's vanilla taste.

64.     These other flavors include vanillin, ethyl vanillin and piperonal.

65.     There are special restrictions placed on the use of vanillin when paired with vanilla, because of the potency of the former compared to the latter, i.e., one ounce of vanillin is equivalent in strength to the vanillin from one pound of vanilla beans.

66.     The Product's ingredient list is misleading because "Natural Flavor" fails to disclose the presence of ethyl vanillin and vanillin.

67.     Because the Product contains vanillin and ethyl vanillin, it is required to state "artificially flavored" on the front label. FDA Letter, Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016; See 21 C.F.R.101.22(i)(2);

68.     Defendant's marketing and promotion of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

69.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

11

CLASS ACTION COMPLAINT

70.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

71.     Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

72.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less $3.89 for boxes of 20 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if represented in a non-misleading way.

**Reliance and Economic Injury**

73.     When purchasing the Product, Plaintiff sought a product with a materially greater amount of vanilla than it actually contained.

74.     When purchasing the Product, Plaintiff sought a product that was natural in that its vanilla flavor was provided exclusively by vanilla beans.

75.     Plaintiff read and relied on Defendant's false and misleading product name, statements, statement of identity and misleading claims in its labeling and advertising of the product.

76.     Plaintiff also saw and relied on statements on the Product, which misleadingly reference only "vanilla" even though much, if not all, of the vanilla flavoring comes from non-vanilla sources.

77.     Plaintiff purchased the Product, and paid more for it than she would have paid believing the product had qualities she sought (e.g., only vanilla flavor from vanilla beans from the vanilla plant) based on the misleading labeling and marketing; but the product was unsatisfactory to her because those representations were false and misleading.

78.     The Product costs significantly more per ounce at Defendant's stores compared to

12

other similar products which lack prominent and unqualified front label claims of "Vanilla."

79.     Plaintiff paid more for the Product than she would have had she not been misled by the false and misleading labeling and advertising complained of herein.

80.     For these reasons, the Product was worth less than what plaintiff paid for them.

81.     Plaintiff lost money as a result of Defendant's deception in that Plaintiff did not receive what she paid for.

82.     Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Product.

83.     By engaging in its misleading and deceptive marketing, sales and pricing scheme, Defendant reaped and continues to reap increased sales and profits.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

85.     The class that Plaintiff seeks to represent (the "Class") is composed of and defined as follows:

> All persons residing in California and Oregon who have purchased the Product for their own use (which includes feeding their families), and not for resale, since May 9, 2014. Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

86.     For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the Plaintiff.

87.     Plaintiff reserves the right to redefine the Class, and/or requests for relief.

88.     This action is maintainable as a class action under Federal Rules of Civil Procedure

13

CLASS ACTION COMPLAINT

Rule 23(a), and (b)(2) and (b)(3).

89.     Numerosity.  The Class consists of thousands of persons throughout the States of California and Oregon.  The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

90.     Commonality and Predominance.  The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action.  They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

91.     Whether Defendant contributed to, committed, or is responsible for the conduct alleged herein;

92.     Whether Defendant's conduct constitutes the violations of law alleged herein;

93.     Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

94.     Whether Class Members are entitled to injunctive relief; and

95.     Whether Class Members are entitled to restitution and damages.

96.     By seeing the name, labeling, display and marketing of the Product, and by purchasing the Product, all Class Members were subject to the same wrongful conduct.

97.     Absent Defendant's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased the Product.

98.     Typicality.  Plaintiff's claims are typical of the claims of the Class, respectively, because she purchased the Product and was injured thereby.  The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

14

CLASS ACTION COMPLAINT

99.     Adequacy.  Plaintiff is an adequate representative of the Class because her interests do not conflict with those of other Class Members.  Each Class Member is entitled to damages reflecting a similar and discrete purchase or purchases that each Class Member made.  Plaintiff has retained competent and experienced class action counsel, who intends to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

100.    Superiority.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable.  The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Plaintiff anticipates no difficulty in the management of this action as a class action.

101.    This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading and deceptive representations and omissions regarding the Product.

102.    Notice to the Class.  Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

## FIRST CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –
Unlawful Conduct Prong of the UCL)**

103.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

104.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate

15

the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

105.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

106.    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

107.    21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

108.    21 C.F.R. Part 169, Food Dressings and Flavorings;

109.    21 C.F.R. § 101.22(i), which sets forth a framework to truthfully identify the source of a product's flavor; and

110.    21 C.F.R. § 102.5 which prohibits misleading common or usual names.

111.    Defendant's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

112.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including, at least, the following sections:

113.    Section 110100 (adopting all FDA regulations as state regulations);

114.    Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or

16

any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

115.     Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

116.     Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

117.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

118.     Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

119.     Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

120.     Each of the challenged statements made and actions taken by Defendant violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

121.     Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised. Defendant's deceptive advertising caused Plaintiff  and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Product over other products that are less expensive, and contain virtually the same or immaterially different amounts of vanilla.

122.     Had Plaintiff and the members of the Class been aware of Defendant's false and

17

CLASS ACTION COMPLAINT

misleading advertising tactics, they would not have purchased the Product at all or would have paid less than what they did for it.

123.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

124.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq.* –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

125.    Plaintiff incorporates by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

126.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

127.    The false and misleading labeling of the Product, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

128.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to Plaintiff and members of the Class.

129.    Defendant's labeling and marketing of the Product is likely to deceive Class Members about the flavoring source and amount of vanilla in the Product.

18

CLASS ACTION COMPLAINT

130.    Defendant either knew or reasonably should have known that the claims and statements on the labels of the Product were likely to deceive consumers.

131.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

132.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

133.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

134.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

135.    As alleged herein, Defendant, in its labeling of the Product, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition and amount of vanilla in the Product.

136.    In reliance on these false and misleading advertising claims, Plaintiff and members of the Class purchased and used the Product without the knowledge that the Product did not get its vanilla taste from vanilla beans.

137.    Defendant knew or should have known that its labeling and marketing was likely to deceive consumers.

138.    As a result, Plaintiff and the Class are entitled to injunctive and equitable relief,

19

CLASS ACTION COMPLAINT

restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of Cal. Civ. Code § 1750 *et seq.* –**
**California's Consumer Legal Remedies Act "CLRA")**

139.    Plaintiff incorporates by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

140.    Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

141.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

142.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

143.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

144.    Defendant's wrongful business practices constituted, and constitute, a continuing

CLASS ACTION COMPLAINT

course of conduct in violation of the CLRA.

145.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Class Action Complaint with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices.  If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

146.    Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

## FIFTH CLAIM
### (ON BEHALF OF THE CALIFORNIA AND OREGON CLASS)
**(Breach of Express Warranty, Implied Warranty, and Magnuson-Moss Warranty)**

147.    Plaintiff incorporates by reference all preceding paragraphs.

148.    The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, compositional and/or environmental which they did not.

149.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

150.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla."

151.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

21

152.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

153.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Products, of the type described here.

154.    The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

155.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.*,Cal Civ. Code § 1780, and  Cal. Civ. Code § 1750 *et seq.* except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

D.    For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.*,17500, *et seq.*, and  Cal. Civ. Code § 1750 *et seq.*;

E.    For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780 and 1750 except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

22

CLASS ACTION COMPLAINT

F.     An award of compensatory damages, the amount of which is to be determined at trial except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act ;

G.     For punitive damages;

H.     For interest at the legal rate on the foregoing sums;

I.      For attorneys' fees;

J.      For costs of suit incurred; and

K.     For such further relief as this Court may deem just and proper.

23

CLASS ACTION COMPLAINT

1

## <u>JURY TRIAL DEMAND</u>

2

Plaintiff demands a jury trial on all causes of action so triable.

3

4

5

Dated:  October 20, 2020

6

**SHUB LAW FIRM LLC**

7

*/s/ Jonathan Shub*
Jonathan Shub (State Bar No. 237708)

8

*jshub@shublawyers.com*

9

Kevin Laukaitis (Pro Hac Vice to file)

10

*klaukaitis@shublawyers.com*
134 Kings Highway E Fl 2

11

Haddonfield, NJ 08033
Telephone: (856) 772-7200

12

Facsimile: (856) 210-9088

13

**SHEEHAN & ASSOCIATES, P.C.**

14

Spencer Sheehan (Pro Hac Vice to file)
spencer@spencersheehan.com

15

60 Cuttermill Rd Ste 409
Great Neck, NY 11021

16

Telephone:  (516) 268-7080
Facsimile:   (516) 234-7800

17

18

**GREG COLEMAN LAW PC**
Alex Straus (State Bar No. 321366)

19

*alex@gregcolemanlaw.com*
16748 McCormick Street

20

Los Angeles, CA 91436
Telephone: (310) 450-9689

21

Facsimile: (310) 496-3176

22

*Counsel for Plaintiff and the Proposed Class*

23

24

25

26

27

24

28

CLASS ACTION COMPLAINT

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Jonathan Shub, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Shub Law Firm LLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California. I declare under the penalty of perjury under the laws of the State of New Jersey and/or California and the United States that the foregoing is true and correct and that this declaration was executed in Haddonfield, New Jersey this 20th day of October, 2020.

*/s/ Jonathan Shub*
Jonathan Shub

25

CLASS ACTION COMPLAINT