Jonathan Shub (State Bar No. 237708)
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Highway E Fl 2
Haddonfield, NJ 08033
Telephone: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISA ROBIE, individually and on behalf of all others similarly situated, | Case No.: 4:20-cv-07355-JSW |
| Plaintiff, | |
| vs. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| TRADER JOE'S COMPANY, | **Demand for Jury Trial** |
| Defendant. | |

Plaintiff Lisa Robie ("Plaintiff"), on behalf of herself and others similarly situated brings this First Amended Class Action Complaint against Trader Joe's Company ("Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

1

1

2

**INTRODUCTION**

1.      Defendant manufactures distributes, markets, labels and sells breakfast cereal labeled as "Vanilla Almond Clusters – A blend of Vanilla Oat Clusters, Corn Flakes, Multigrain Flakes and Almonds" under their Trader Joe's brand ("Product").

2.      The Product is available to consumers from Defendant's over five hundred (500) retail stores in the United States and website and is sold in boxes of 20 OZ (568g).

3.      During the Class Period (as defined below), Plaintiff purchased the Product in California.

4.      The representations are misleading because the front label and ingredient list fail to disclose artificial flavors.

5.      Defendant falsely and misleadingly markets the Product to consumers as containing only natural flavors not containing artificial flavors.

6.      Defendant charges a price premium for the Product.

7.      Plaintiff seeks damages and an injunction to stop Defendant's false and misleading marketing practices with regards to the Product.

**JURISDICTION**

8.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

9.      The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

10.     Plaintiff is a citizen of California who seeks to represent a class of California and Oregon purchasers of the Product.

11.     Defendant is a California corporation.

Amended Class Action Complaint

12.     Diversity is established because under CAFA, members of the proposed class are citizens of Oregon, while Defendant is a citizen of California. 28 USC 1332(d)(2)(A).

13.     CAFA defines class members as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 USC 1332(d)(1)(D).

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution and sale of its product here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

**PARTIES**

15.     Plaintiff Lisa Robie is a resident of the City of Oakland and County of Alameda, California.

16.     During the Class Period (as defined below), in California, she purchased the Product for personal, family, or household use on occasions during 2019 and 2020 and on or around February 15, 2020.

17.     Plaintiff purchased the Product at Defendant's store locations, including 22224 Redwood Rd, Castro Valley, CA 94546.

18.     Plaintiff, like any reasonable consumer, believed consistent with U.S. federal and state law that if a label does not include a statement that it is artificially flavored then that food does not contain artificial flavoring ingredients.

19.     Plaintiff justifiably relied on Defendant's omission from the Product label disclosing the legally required disclosure of artificial flavoring.

20.     Plaintiff, as a reasonable consumer, is not required to subject consumer food products to laboratory analysis, to scrutinize the labels on the back of products to discover that a front label

3

Amended Class Action Complaint

is false and misleading, or to search the labels for information that federal regulations require be displayed prominently on the front – and, in fact, under state law is entitled to rely on statements that Defendant deliberately places on the Product's labeling.

21.     Defendant was aware that consumers, like Plaintiff and the Class, prefer foods with natural flavors over those with artificial flavors.

22.     Defendant intended for Plaintiff and the Class to be deceived, and Plaintiff and the Class actually were deceived by the unlawful labeling.

23.     Plaintiff and the Class lost money as a result of Defendant's conduct because they would not have purchased the Product or would not have paid as much  as they did in the absence of Defendant's misrepresentations and omissions.

24.     Defendant, but not Plaintiff, knew or should have known that the Product's labeling was in violation of federal regulations and state law.

25.     Plaintiff intends to, seeks, to, and will purchase the Product again when she can do so with the assurance that the Product's labels, which indicate that the Product is only flavored with natural flavors, are lawful and consistent with the Product's ingredients.

## **FACTUAL ALLEGATIONS**

26.     Trader Joe's ("defendant") manufactures, distributes, markets, labels and sells Vanilla Almond Clusters Cereal under the Trader Joe's brand ("Product").

27.     The representations are misleading because the front label statements of "Vanilla Almond," "Flavored With Other Natural Flavors," "A blend of Oat Clusters, Corn Flakes, Multigrain Flakes and Almonds" and ingredient list omit disclosing the Product's artificial flavors.

4

Amended Class Action Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    28.    The Product's main, or characterizing flavor is understood by Plaintiff and

23   consumers to be "vanilla" because the name is "Vanilla Almond Clusters Cereal."

24    29.    Where a characterizing flavor of a product is not created exclusively by the identified

25   ingredient, the product's front label must state that the product is flavored with either, or both of,

26   natural or artificial flavorings. 21 C.F.R. § 101.22(i) (requiring statements as to whether flavor is

27   from the characterizing ingredient, natural flavor derived from the ingredient, natural flavor from

28

Amended Class Action Complaint

natural sources other than the ingredient or artificial sources). *See, e.g.,* California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code §§ 9875 *et seq.*, incorporating 21 C.F.R. § 101.22.[1]

30.     Under California's Sherman Law, for example, any food is misbranded "If it bears or contains any artificial flavoring, artificial coloring, or permitted chemical preservative, unless it bears labeling stating that fact. Cal. Health & Safety Code § 0740; *see also* 21 C.F.R. § 101.22.[2]

31.     The Product contains added vanillin and ethyl vanillin which simulates, resembles, and reinforces the characterizing vanilla flavor for the Product.

32.     Defendant was therefore required to place prominently on the Product's front label a notice sufficient to allow reasonable consumers to understand that the Product contained artificial flavoring – vanillin and ethyl vanillin – which simulates, resembles, and reinforces the characterizing vanilla flavor for the Product.

33.     The Product contains a trace amount of vanilla, if any, and the Product's vanilla taste is provided exclusively by the artificial flavors.

A.  Vanilla

34.     Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

35.     The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for vanilla flavorings.

36.     The vanilla bean is heated in the sun for weeks, soaked in alcohol solution and its flavor constituents extracted (vanilla extract).

---

[1] The laws of California and other states incorporate all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation necessarily violates California's Sherman Law.
[2] California has adopted and incorporated in its entirety, all provisions of the Federal Food, Drug and Cosmetic Act ("FFDCA") through the Sherman Law.

Amended Class Action Complaint

37.     Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract and is responsible for roughly one-third of vanilla's flavor and aroma.

38.     Vanillin is found in the form of its β-D-glucoside (glucovanillin) in green vanilla beans.

39.     The curing process, including the hydrolysis of its β-D-glucoside, leads to the release of vanillin from glucovanillin, at concentrations of 1-4% of dry weight of cured beans.

40.     Vanilla's unique flavor is due to the hundreds of odor-active compounds besides vanillin, such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

41.     Methyl cinnamate and cinnamyl alcohol provide cinnamon and creamy notes.

42.     P-cresol contributes flavor notes described as woody and spicy.

43.     Acetovanillone provides a sweet, honey taste.

44.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

45.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

46.     The isolation of vanillin from vanilla in the late 19th century resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or *de minimis* amount, boosted by low cost, synthetic vanillin.

B.  Consumers Desire Natural Flavors and Avoid Artificial Flavors

47.    Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[3]

48.    According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

49.    Consumers are willing to pay more for natural flavors like real vanilla, understood as more natural, and are avoiding foods and beverages which contain artificial flavors.[4]

50.    At least seven out of ten consumers avoid artificial flavors because they believe the synthetic ingredients are associated with detrimental health effects.[5]

51.    Defendant's labeling and advertising reflect these consumer preferences – not by making the Product solely with natural flavoring ingredients, but instead by concealing the fact that the Product is artificially flavored.

C.  Natural Vanillin is Only From the Vanilla Plant

52.    The Product contains vanillin and ethyl vanillin, classified by the FDA as synthetic flavoring substances and artificial flavors. 21 C.F.R. § 182.60. See 21 C.F.R. § 182.60 (listing vanillin and ethyl vanillin as "[s]ynthetic flavoring substances and adjuvants").

53.    The only natural vanillin is from the vanilla plant and not isolated commercially, because it is part of "vanilla extract."

54.    This means the vanillin added to the Product from non-vanilla sources is artificial.

---

[3] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[4] Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[5] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

Amended Class Action Complaint

55.     In laboratory settings, scientists have supposedly manufactured vanillin in a way that meets the FDA's definition for a "natural flavor" as defined by the FDA:

> [T]he essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

21 C.F.R. § 101.22(a)(3).

56.     This means that the vanillin molecule must come from a natural source and be made through a natural process, such as distillation, roasting, heating, enzymolysis or fermentation.

57.     While enzymatic reactions and fermentation methods exist to convert eugenol (and other natural sources) to vanillin, these methods are seldom used and are very costly.

58.     For instance, the rate of conversion of eugenol to vanillin is very low, in part due to the toxicity and limited water solubility of eugenol.

### D.  The Vanillin and Ethyl Vanillin in the Product are Artificial Flavors

59.     Artificial flavor is defined as any flavoring from a synthetic source or made through an artificial process. 21 C.F.R. § 101.22(a)(1).

60.     The Product contains the artificial flavors of vanillin and ethyl vanillin.

61.     The main sources of vanillin are petroleum (guaiacol), lignin (tree pulp), eugenol or ferulic acid.

62.     Guaiacol is the source of 85% of vanillin, and obtained from the synthetic petrochemicals, benzene and propylene, whose industrial source is petroleum.

63.     Converting guaiacol to vanillin entails condensation with glyoxylic acid.

64.     The processes include chemical reactions such as decarboxylation and aromatic

9

substitution.

65.     Vanillin is also derived from lignin, present in sulfite wastes of the wood pulp industry.

66.     Vanillin from lignin is an artificial flavor because these sulfite wastes contain chemicals used in the processing of wood pulp.

67.     Lignin is difficult to degrade by natural means, which is why production of vanillin from lignin entails artificial processes including chemical reactions with the presence of chemical catalysts.

68.     Lignin is broken down either with sodium hydroxide or calcium hydroxide and simultaneously oxidized in air in the presence of chemical catalysts.

69.     When these chemical reactions are completed, the solid wastes and vanillin are removed from the acidified solution with a non-natural solvent, e.g., butanol or benzene, and reextracted with sodium hydrogen sulfite solution.

70.     The vanillin is subjected to reacidification with sulfuric acid followed by vacuum distillation, and several recrystallization cycles.

71.     Vanillin from lignin is an artificial flavor because the sulfite wastes of wood pulp are not a natural source, and the chemical reactions used to convert it to vanillin are not natural processes.

72.     Eugenol, the major constituent of clove oil, is a source of vanillin, but required to be identified as an artificial flavor.

73.     The first method of converting eugenol to vanillin requires isomerization of eugenol to isoeugenol under alkaline conditions, followed by side-chain cleavage to vanillin and two-carbon moiety under acidic conditions.

74.     The second method of converting eugenol to vanillin involves the intermediary of

10

coniferyl alcohol which is oxidized to ferulic acid.

75.     The ferulic acid is subjected to high heat of 800 degrees Celsius, high amounts of pressure, 20 atmospheric pressure units, and chemical catalysts, sodium hydroxide or sodium chloride.

76.     The high heat, high pressure and chemical catalysts are outside of what is considered a natural process for producing a natural flavor.

77.     The Product's added vanillin, made through an artificial process and/or from an artificial source, is required to be declared as an artificial flavor.

78.     Ethyl vanillin does not come from the vanilla plant at all – it is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. *See* 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "[s]ynthetic flavoring substances and adjuvants").

79.     Though vanillin is found naturally in vanilla beans, ethyl vanillin is a synthetic flavor not found in nature.

80.     Ethyl vanillin is four times as potent as vanillin, and derived from coal-tar, an artificial source.

E.    Vanillin added to Vanilla is Always an Artificial Flavor

81.     According to the FDA and The Flavor Extract Manufacturer's Association ("FEMA"), the trade group for flavoring industry, *any* non-vanilla flavor compounds that simulate vanilla but are not derived from vanilla beans are considered artificial flavors.[6]

82.     Therefore, the addition of vanillin and ethyl vanillin – artificial, non-vanilla flavors – requires the front label to state "artificially flavored."

---

[6] John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").

Amended Class Action Complaint

83.     Defendant's labeling purports to comply with FDA regulations where a food contains some flavor from the characterizing ingredient and flavors from natural sources other than the characterizing flavor which enhance, resemble or simulate the characterizing flavor. 21 C.F.R. § 101.22(i)(1)(iii) (requiring front label to state "With Other Natural Flavor.").

84.     However, this regulation is not applicable because the vanillin and ethyl vanillin are artificial flavors.

85.     Because the Product purports to have a characterizing flavor of vanilla but is flavored predominantly from vanillin and ethyl vanillin, from artificial and non-vanilla sources, it must be identified as "as artificially flavored."

86.     Moreover, it is reasonable for consumers to expect the Product to have an appreciable amount of real vanilla.

87.     The Product's name of "Vanilla Almond Clusters" tells consumers it will contain almonds.

88.     Consumers can observe and confirm actual almond pieces in the Product.

89.     Consumers are unable to visually confirm the presence of flavoring from real vanilla or identify artificial flavors by sight.

90.     Instead, they must rely on Defendant including real vanilla and not including artificial flavors.

91.     Plaintiff and consumers' was misplaced, because the Product has a de minimis amount of vanilla, if any, and contains artificial flavors.

F.   Ingredient List is Misleading

92.     Analytical testing of the Product performed in the summer of 2020 revealed it contains the added artificial flavors of vanillin and ethyl vanillin.

93.     This was concluded because (1) the amount of vanillin was significantly greater than

12

it would be if it were only present because of the Product containing vanilla extract as part of the "Natural Flavor" ingredient, (2) the vanillin was unaccompanied by the expected amounts of other aromatic compounds from the vanilla plant and (3) ethyl vanillin was detected independently.

94.     The Product's flavoring failed to reveal detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methyoxybenzyl alcohol (p-anisyl alcohol) and/or vanillic acid, even though these compounds were analyzed for.

95.     The absence of these compounds also means the Product contains, at most, a trace or de minimis amount of vanilla.

96.     In addition to containing undisclosed artificial flavors, the Product lacks the expected vanilla taste because vanillin and ethyl vanillin are not synonymous with vanilla, due to the absence of the critical odor-active compounds which together provide the flavor of vanilla.

97.     The Product's ingredient list tacitly reveals it is not flavored exclusively with vanilla because it lists the generic ingredient "Natural Flavor" instead of vanilla extract.

98.     The ingredient list conceals the added artificial flavors – vanillin and ethyl vanillin – as part of the generic "Natural Flavor" instead of using the specific, non-generic name of these flavors – "vanillin" or "artificial flavor" for vanillin and "artificial flavor" for ethyl vanillin. 21 C.F.R. § 101.4(b)(1).

**INGREDIENTS:** WHOLE ROLLED OATS. MILLED CANE SUGAR, VEGETABLE OIL (CANOLA AND/OR SAFFLOWER AND/OR SUNFLOWER OIL), RICE FLOUR, ALMONDS, CORNSTARCH, HONEY, NATURAL FLAVOR, SALT, BARLEY MALT SYRUP.

99.    Defendant knows there are two types of vanillin – natural vanillin from the vanilla plant and artificial vanillin from sources such as petroleum and lignin.

100.    Even if reasonable consumers were to investigate the "Vanilla Almond" and "Flavored With Other Natural Flavors" statement on the Product's front label by scrutinizing the ingredient statement on the back, consumers would still be unaware that the Product contained artificial flavors.

101.    According to labeling experts – but not reasonable consumers – "Brands that print phrases like 'natural vanilla' [or 'natural flavor'] on their packages may actually be pushing products that contain anything but."[7]

102.    Professor of Food Science, Scott Rankin, at the University of Wisconsin-Madison, explained that "the different wordings on the labels amount to an industry shorthand for specific

---

[7] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015 (though the discussion was centered on ice cream, the identification of ingredients is identical on ice cream or vanilla cereal).

Amended Class Action Complaint

kinds of natural or artificial flavorings."

103.   For instance, "natural vanilla flavor" often refers to "vanillin extracted from wood."

104.   "Natural flavor" on the other hand, "(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level)" and other flavorings that simulate vanilla.

105.   Defendant's "Natural Flavor" contains added artificial vanillin yet fails to disclose it separately.

G.   Front Label is Misleading

106.   Defendant adds artificial vanillin and ethyl vanillin to the Product to give it a "sweet, creamy" taste, even though these flavors are known to have a "chemical-like" taste because they lack the other flavor compounds in vanilla.

107.   Although the vanillin and ethyl vanillin used to simulate the Product's characterizing vanilla flavor is (1) not from vanilla beans, (2) from an artificial petrochemical source and (3) made through an artificial process, Defendant pretends otherwise, conflating the natural and artificial flavoring and deceiving consumers.

108.   Even if the added artificial vanillin used in the Product was made from a natural source and through a natural process, the Product would still be required to state "artificially flavored" on the front label.

109.   Since the only natural vanillin is from the vanilla plant, the Product's added vanillin from other, non-vanilla sources is by definition, artificial, and an artificial flavor.

110.   Federal and state law require the Product's front label to inform consumers that the Product contains artificial flavoring. 21 C.F.R. § 101.22(c).

111.   Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor" of vanilla, the front label is required to state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

112.    Defendant's front label evinces an attempt to label its Product in conformity with what regulations require, but it failed to account for the presence of vanillin and ethyl vanillin.

113.    Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

114.    Defendant intended that Plaintiff and the proposed Class rely on those omissions and affirmative misrepresentations.

115.    Federal and state law require Defendant to include sufficient notice on the Product's label to alert consumers that the Product is artificially flavored.

116.    Defendant's conduct violated the consumer protection statutes of California.

117.    When purchasing the Product, Plaintiff and Class Members were seeking products of particular qualities that were flavored only with natural flavoring ingredients as described – by statement and/or omission – on the label and which did not contain artificial flavoring.

118.    Defendant sold more of the Product and at higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

119.    The value of the Product that plaintiff purchased, used and/or consumed was materially less than its value as represented by defendant.

120.    Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

121.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less $3.89 for boxes of 20 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if represented in a non-misleading way.

Amended Class Action Complaint

## CLASS ACTION ALLEGATIONS

122.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

123.     The class that Plaintiff  seeks to represent (the "Class") is composed of and defined as follows:

> All persons residing in California and Oregon who have purchased the Product for their own use (which includes feeding their families), and not for resale, since May 9, 2014.  Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

124.     For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the Plaintiff.

125.     This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), and (b)(2) and (b)(3).

126.     Numerosity.  The Class consists of thousands of persons throughout the States of California and Oregon.  The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

127.     Commonality and Predominance.  The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action.  They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

128.     Whether Defendant contributed to, committed, or is responsible for the conduct alleged herein;

129.     Whether Defendant's conduct constitutes the violations of law alleged herein;

130.     Whether Defendant acted willfully, recklessly, negligently, or with gross negligence

17

in the violations of laws alleged herein;

131.    Whether Class Members are entitled to injunctive relief; and

132.    Whether Class Members are entitled to restitution and damages.

133.    By seeing the name, labeling, display and marketing of the Product, and by purchasing the Product, all Class Members were subject to the same wrongful conduct.

134.    Absent Defendant's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased the Product.

135.    Typicality.  Plaintiff's claims are typical of the claims of the Class, respectively, because she purchased the Product and was injured thereby.  The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

136.    Adequacy.  Plaintiff is an adequate representative of the Class because her interests do not conflict with those of other Class Members.  Each Class Member is entitled to damages reflecting a similar and discrete purchase or purchases that each Class Member made.  Plaintiff has retained competent and experienced class action counsel, who intends to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

137.    Superiority.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable.  The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Plaintiff anticipates no difficulty in the management of this action as a class action.

138.    This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair,

Amended Class Action Complaint

misleading and deceptive representations and omissions regarding the Product.

139.    Notice to the Class.  Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

### FIRST CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –
Unlawful Conduct Prong of the UCL)**

140.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

141.    The acts, omissions, misrepresentations, practices, and non-disclosures of Whole Foods, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

    i.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

    ii.    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

    iii.    21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

    iv.    21 C.F.R. § 101.22 which prohibits concealment of added artificial flavor which simulates a characterizing natural flavor.

142.    Defendant's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

143.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including, at least, the following sections:

    i.    Section 110100 (adopting all FDA regulations as state regulations);

    ii.    Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

    iii.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

    iv.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

    v.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

    vi.    Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

    vii.    Section 110660 ("Any food is misbranded if its labeling is false or misleading

in any particular.").

144.    Each of the challenged statements made and actions taken by Defendant violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

145.    Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase the Product which was of lesser value and quality than advertised. Defendant's deceptive advertising caused Plaintiff  and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Product over other products that are less expensive, and do not contain artificial flavors.

146.    Had Plaintiff and the members of the Class been aware of Defendant's false and misleading advertising tactics, they would not have purchased the Product at all or would have paid less than what they did for it.

147.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

148.    Plaintiff  also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

## SECOND CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200, *et seq.* –
Unfair and Fraudulent Conduct Prong of the UCL)**

149.    Plaintiff incorporates by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

150.    California Business & Professions Code section 17200 prohibits any "unlawful,

21

unfair or fraudulent business act or practice."

151.     The false and misleading labeling of the Product, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.   Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

152.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to Plaintiff and members of the Class.

153.     Defendant's labeling and marketing of the Product is likely to deceive Class Members about the flavoring source and presence (or absence) of artificial flavoring in the Product.

154.     Defendant either knew or reasonably should have known that the claims and statements on the labels of the Product were likely to deceive consumers.

155.     In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

156.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

### THIRD CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –
False and Misleading Advertising)**

157.     Plaintiff  incorporates by reference all allegations contained in the complaint as if fully set forth herein.

158.     California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

22

159.    As alleged herein, Defendant, in its labeling of the Product, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition and amount of vanilla in the Product.

160.    In reliance on these false and misleading advertising claims, Plaintiff  and members of the Class purchased, consumed and used the Product without the knowledge that the Product did contained artificial flavoring.

161.    Defendant knew or should have known that its labeling and marketing was likely to deceive consumers.

162.    As a result, Plaintiff  and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of Cal. Civ. Code § 1750 *et seq*. –**
**California's Consumer Legal Remedies Act "CLRA")**

163.    Plaintiff incorporates by reference all preceding paragraphs.

164.    The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

165.    Defendant's policies, acts and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continues to violate the following sections of the CLRA:

  i.    Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

Amended Class Action Complaint

ii.  Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

iii.  Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

iv.  Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

v.  Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

166.  Plaintiff requests that this Court enjoin the Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

167.  If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the Class will continue to suffer harm.

168.  On October 23, 2020, Plaintiff, via her counsel, sent a Consumer Legal Remedies Notice ("CLRA Notice") via certified mail, return receipt requested, pursuant to Cal. Civ. Code § 1782, to Defendant's headquarters and registered agent within the state of California.

169.  Defendant received the CLRA Notices on October 26, 2020 (headquarters) and October 27, 2020 (registered agent).

170.  The CLRA Notices provided Defendant notice of the misconduct – including undisclosed artificial flavors –  and requested that Defendant cure its misconduct pursuant to Cal. Civ. Code. § 1782 within 30 days. Defendant has failed to do so.

171.  Plaintiff seeks injunctive relief, restitution and damages for Defendant's violation of the CLRA.

Amended Class Action Complaint

**FIFTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA AND OREGON CLASS)**
(**Breach of Express Warranty, Implied Warranty, and Magnuson-Moss Warranty**)

172.     Plaintiff incorporates by reference all preceding paragraphs.

173.     The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, compositional and/or health-related which it did not.

174.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

175.     The presence of artificial flavors has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial flavors where the front label only discloses "Vanilla Almond" and "Flavored With Other Natural Flavors."

176.     This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

177.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

178.     Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

179.     The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

180.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

**SIXTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA AND OREGON CLASS)**
**(Fraud)**

181.    Plaintiff incorporates by reference all preceding paragraphs.

182.    Defendant misrepresented the substantive, quality, compositional and/or health-related attributes of the Product.

183.    The presence of artificial flavors has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial flavors where a product's label only discloses natural flavors.

184.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

185.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

**SEVENTH CLAIM**
**(Unjust Enrichment)**

186.    Plaintiff incorporates by reference all preceding paragraphs.

187.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

26

Amended Class Action Complaint

C.  For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780;

D.  For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq.*;

E.  For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780;

F.  An award of compensatory damages, the amount of which is to be determined at trial;

G.  For punitive damages;

H.  For interest at the legal rate on the foregoing sums;

I.  For attorneys' fees;

J.  For costs of suit incurred; and

K.  For such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a jury trial on all causes of action so triable.

Amended Class Action Complaint

Dated:  February 9, 2021

SHEEHAN & ASSOCIATES, P.C.

*/s/ Spencer Sheehan*
Spencer Sheehan*
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Telephone:  (516) 268-7080
Facsimile:   (516) 234-7800

SHUB LAW FIRM LLC
Jonathan Shub (State Bar No. 237708)
*jshub@shublawyers.com*
Kevin Laukaitis*
*klaukaitis@shublawyers.com*
134 Kings Highway E Fl 2
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088

GREG COLEMAN LAW PC
Alex Straus (State Bar No. 321366)
*alex@gregcolemanlaw.com*
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
Facsimile: (310) 496-3176

*Pro Hac Vice* Admission or Application filed or forthcoming

*Counsel for Plaintiff and the Proposed Class*

Amended Class Action Complaint